UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

___

JEROME MENDELL HAILEY,

    Plaintiff,

v.

LLOYD BLACKMAN,

    Defendant.

_____/

Case No. 1:18-cv-464

Honorable Paul L. Maloney

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.  Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Montcalm County, Michigan. Plaintiff sues Inspector Lloyd Blackman, who works at Richard A. Handlon Correctional Facility (MTU).

Plaintiff alleges that he was incarcerated at MTU for continuance in a "Residential Treatment Program (RTP) in a level (2) two correctional facility." (Compl., ECF No. 1, PageID.3.) Plaintiff filed a grievance against Blackman for failing to "adhere [to] his duty" when Plaintiff's property was stolen from the MTU mailroom. (*Id.*) On January 4, 2018, while Plaintiff was waiting to be interviewed about his grievance, Blackman stepped out of his office and stated to Plaintiff, "Oh, you filed a grievance against me, your ass is out of here!" (*Id.*) Plaintiff responded, "I am going to write another one on you, because I have a CFA hold; [I am] on Calvin's Spring Semester; and I have a follow-up with the psychiatrist[.]" (*Id.*) Blackman allegedly told Plaintiff "that grievance will never be heard, submitted, nor read[.] I can guarantee you won't be able to sue me piece of shit!" (*Id.*)

On January 11, 2018, Plaintiff was transferred to DRF. As a result, his "Violence Prevention Program," "Calvin's College semester," and appointment with his psychiatrist were cancelled.

Plaintiff claims that Defendant retaliated against him. As relief, Plaintiff seeks monetary and punitive damages.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff asserts that Defendant retaliated against him for filing a grievance. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of

ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's allegations fail to satisfy the second element of a retaliation claim. He does not allege an adverse action. Plaintiff alleges that he was transferred from one level II facility to another level II facility;[1] this is not sufficient to state a retaliation claim.

The Court of Appeals for the Sixth Circuit has repeatedly held that a prison transfer does not rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights. *See Siggers–El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005); *see also Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Id.* A prison transfer can rise to the level of an adverse action when there are "forseeable, negative consequences" that "inextricably follow" from the transfer, such as "the prisoner's loss of his high-paying job and reduced ability to meet with his lawyer." *Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011). Similarly, transfer to a more restrictive form of confinement has been recognized as an adverse action. *See Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010). Absent "unusual circumstances" like these, "prison officials, rather than judges, should decide where a particular prisoner should be housed." *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013).

---

[1] Plaintiff does not allege that Defendant initiated or participated in the transfer, but for purposes of this Opinion, the Court assumes that Defendant was responsible for the transfer.

Plaintiff does not allege any aggravating circumstances that put his prison transfer outside the "ordinary" rule. He implies that he was not able to continue participation in educational and/or rehabilitative programs that were available at MTU. However, that is an ordinary consequence of any prison transfer. Different prisons offer different programs. The inability to continue participation in a program offered at another prison is not a circumstance sufficient to give rise to a retaliation claim. *See Friedmann v. Corrs. Corp. of Am.*, 11 F. App'x 467, 471 (6th Cir. 2001) (prison transfer not an adverse action even though the new prison did not offer the same programs in which the prisoner had previously participated).

Plaintiff also contends that a visit with his psychiatrist was cancelled. However, he does not allege that he is unable to access those services at his present place of confinement. In other words, he does not allege that the transfer had any foreseeable negative consequences for his mental health care. Thus, the cancellation of the visit does not transform the prison transfer into an adverse action.

Finally, Plaintiff alleges that Blackman threatened that, if Plaintiff filed another grievance, Blackman would ensure that Plaintiff's grievance would not be submitted or read, and that Plaintiff would not be able to sue him. A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Yarrow*, 78 F. App'x at 542 (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Yarrow*, 78 F. App'x at 542. Defendant Blackman's threats were *de minimis* because they were clearly empty. Defendant could not have prevented Plaintiff from filing grievances, or prevented other prison officials from reviewing them. Prison inspectors do not

5

control the grievance process. The prison grievance coordinator is typically the official that receives the grievance at the first step of the grievance process. MDOC Policy Directive 03.02.130 ¶ V (effective July 9, 2007). When no response is received at the first level of review, a prisoner can file a grievance appeal directly with the step II grievance coordinator, which in most instances is the warden or deputy warden of the facility. *See id.* ¶ DD. If no response is received at step II, then the prisoner can file a grievance with the Grievance and Appeals Section of the MDOC's Office of Legal Affairs. *Id.* ¶ FF.

Moreover, Blackman could not have prevented Plaintiff from filing a lawsuit against him. Even if Blackman was somehow able to impede Plaintiff's access to the grievance process so that Plaintiff could not exhaust his grievance remedies before filing a civil rights lawsuit, as required by 42 U.S.C. § 1997e(a), then the grievance process would no longer qualify as an "available" administrative remedy under that statute. *Cf. Kennedy v. Tallio*, 20 F. App'x 469, 470-71 (6th Cir. 2001) (placement on modified access to the grievance process is not an adverse action, and such placement cannot prevent a prisoner from filing claims in federal court). In that situation, Plaintiff would not be required to exhaust the grievance process before filing suit.

Defendant's empty threats could not deter a person of ordinary firmness from engaging in protected conduct. Accordingly, Plaintiff's allegations do not state a retaliation claim.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the case will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   May 11, 2018                              /s/ Paul L. Maloney
                                                   Paul L. Maloney
                                                   United States District Judge