UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME MENDELL HAILEY,

        Plaintiff,

Case No. 1:18-cv-464

Hon. Paul L. Maloney

v.

LLOYD BLACKMAN,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by Jerome Mendell Hailey (referred to as "plaintiff" or "Hailey"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). Hailey has sued Inspector Lloyd Blackman (referred to as "defendant" or "Blackman") for incidents which occurred at the MDOC's Richard A, Handlon Correctional Facility (MTU). This matter is now before the Court on Blackman's motion for summary judgment for failure to exhaust administrative remedies (ECF No. 81).

    **I.**    **Plaintiff Hailey's claim**

The Court summarized Hailey's claim alleged in the original complaint as follows:

> Plaintiff alleges that he was incarcerated at MTU for continuance [sic] in a "Residential Treatment Program (RTP) in a level (2) two correctional facility." (Compl., ECF No. 1, PageID.3.) Plaintiff filed a grievance against Blackman for failing to "adhere [to] his duty" when Plaintiff's property was stolen from the MTU mailroom. (*Id*.) On January 4, 2018, while Plaintiff was waiting to be interviewed about his grievance, Blackman stepped out of his office and stated to Plaintiff, "Oh, you filed a grievance against me, your ass is out of here!" (*Id*.) Plaintiff responded, "I am going to write another one on you, because I have a CFA hold; [I am] on Calvin's Spring Semester; and I have a follow-up with the psychiatrist[.]" (*Id*.) Blackman allegedly told Plaintiff "that grievance will never be heard, submitted, nor read[.] I can guarantee you won't be able to sue me piece of shit!" (*Id*.)

1

> On January 11, 2018, Plaintiff was transferred to DRF [Carson City Correctional Facility]. As a result, his "Violence Prevention Program," "Calvin's College semester," and appointment with his psychiatrist were cancelled.
>
> Plaintiff claims that Defendant retaliated against him. As relief, Plaintiff seeks monetary and punitive damages.

Opinion (ECF No. 2, PageID.6-7). The Court dismissed Hailey's complaint for failure to state a claim. *Id*. at PageID.11-12; Judgment (ECF No. 3).

On appeal, the Sixth Circuit affirmed the judgment in part, vacated the judgment in part, and remanded the case for further proceedings, stating in relevant part:

> To state a First Amendment retaliation claim, a prisoner must plead facts demonstrating that: (1) he engaged in conduct protected by the First Amendment; (2) he suffered an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).
>
> In this case, the district court concluded that Hailey's retaliation claim failed because his transfer to another prison and loss of programming opportunities did not constitute an adverse action as a matter of law. The adverse action element "is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Id*. at 398. And "since there is no justification for harassing people for exercising their constitutional rights[, the effect on freedom of speech] need not be great in order to be actionable." *Id*. at 397 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).
>
> The district court was correct that, as a general rule, a transfer from one prison to another prison of the same security level is not an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). Similarly, a transfer that causes a prisoner to lose programming opportunities is not an adverse action. *See Friedmann v. Corr. Corp. of Am.*, 11 F. App'x 467, 471 (6th Cir. 2001). But here, Hailey has alleged more than just a transfer and more than just a loss of programming opportunities—he claimed that the transfer interfered with his ability to complete the VPP, which he needs in order to be eligible for parole. And we have recognized that an action that adversely affects a prisoner's release date, such as the loss of goodtime credits, is sufficient to deter a prisoner of ordinary firmness from exercising his right to file grievances. *See Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002). Since Hailey was on a CFA hold, which was in place specifically so that he could complete the required programming, interfering with or delaying his parole eligibility was a foreseeable consequence of transferring him

to another prison. *See Hill*, 630 F.3d at 474-75. Hailey therefore sufficiently pled that he suffered an adverse action resulting from his transfer; the district court erred in concluding otherwise.

> The district court concluded that Blackman's alleged threat to suppress any grievance that Hailey might file against him in the future was too *de minimis* to constitute an adverse action because Blackman was not in a position to block Hailey's grievance from being considered, and even if he were, Hailey would not be prejudiced because then he would not be required to exhaust his administrative remedies before filing a federal lawsuit. We have suggested that interfering with a prisoner's ability to file grievances is sufficient to constitute an adverse action, *see Rodgers v. Hawley*, 14 F. App'x 403, 409-10 (6th Cir. 2001), but here Hailey's transfer obviated any opportunity that Blackman had to prevent Hailey from filing grievances. Consequently, Blackman's threat amounted to no more than non-actionable verbal abuse. *See Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *3-4 (6th Cir. Mar. 31, 2017). The district court therefore correctly concluded that Blackman's threat was not an adverse action.

*Jerome Mendell Hailey v. Lloyd Blackman*, No. 18-1808 (Unpublished Order) (6th Cir. Jan. 31, 2019) (ECF No. 17, PageID.50-51); Mandate (issued Feb. 22, 2019) (ECF No. 20).

After the Sixth Circuit entered its opinion, and before that court entered the mandate, Blackman filed an amended complaint against Black for retaliation (ECF No. 19). Consistent with the order of remand, Hailey alleged that on December 19, 2017, he wrote a grievance against Blackman "for failure to adhere to his duty when plaintiff Hailey [sic] property was stolen within the Administrative mail room." Amend. Compl. at PageID.55. Hailey continued (in his words):

> 2.) On January 4, 2018, while awaiting to get interviewed on a grievance against defendant Blackman, Mr. Blackman stepped outside his office and stated, "Oh, you filed a grievance against me, your ass is out of here!" Plaintiff Hailey replied "I am going to write another one on you, because I have a CFA-Hold, on Calvin's College Spring Semester, and I have a follow-up with a psychiatrist". Defendant Blackman then stated "that grievance will never be hears, submitted, nor read I can guarantee you won't be able to sue me piece of shit!".
>
> 3.) On January 11, 2018, Plaintiff Hailey was transferred to Carson City Correctional Facility. Plaintiff Hailey Violence Prevention Program (VPP), Calvin's College semester, and the follow-up with the psychiatrist was all cancelled.

3

> 4.) Defendant Blackman know a prisoner with a violent offense can not be eligible or obtain a parole without completing the Violence Protection Program (VPP). In which defendant knowingly intervened by initiated plaintiff Hailey's transfer despite plaintiff having a CFA-hold.

*Id*. Hailey alleged that Blackman intended to violate his First Amendment rights and asks for compensatory damages of $65,000.00, "ancillary" damages of $905.00, and punitive damages of $200,000.00. *Id*.

This Court dismissed Hailey's lawsuit without prejudice because he failed to properly serve Blackman. *See* Order (ECF No. 53). The Sixth Circuit vacated the order of dismissal on appeal. *See Jerome Mendell Hailey v. Lloyd Blackman*, No. 20-1685 (Order) (Unpublished) (6th Cir. Jan. 13. 2021) (ECF No. 67); Mandate (issued Feb. 8. 2021) (ECF No. 68). After proper service of the amended complaint, Blackman filed the present motion for summary judgment.

## II.     Defendant Blackman's motion for summary judgment

### A.     Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

4

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.     Lack of Exhaustion

#### 1.     Exhaustion requirement

Blackman contends that Hailey failed to exhaust the remaining retaliation claim alleged against him. The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and

other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2.     MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3.     Discussion

Blackman contends that he is entitled to summary judgment because Hailey did not properly exhaust the January 2018 retaliation incident. Blackman points out that Hailey's Step III Grievance Report shows that he did not complete a Step III appeal for any grievance filed during

the relevant time period, *i.e.*, between December 2017 and February 2018. See MDOC Prisoner Step III Grievance Report (ECF No. 82-3). In short, there is no evidence that Hailey properly exhausted a grievance related to Blackman's alleged retaliation in January 2018.

In his response, Hailey included copies of documents which he claims to have mailed to the MTU Grievance Coordinator after his transfer to DRF. See Letter (dated Jan. 15, 2018) and proposed grievance (dated Jan. 11, 2018, with incident date of Jan. 15, 2018) (ECF Nos. 85-1 and 85-2). The proposed grievance complains that Blackman retaliated against him in violation of the First Amendment by transferring Hailey to DRF on January 11, 2018 (ECF No. 85-2). In addition, Hailey attached a copy of a letter dated January 24, 2018, inquiring about the grievance (ECF No. 85-3) and a copy of the proposed grievance entitled "Second Attempt" (ECF No. 85-4). Although there is no evidence of any grievance being filed, Hailey included copies of a home-made "Step 2 Grievance Appeal Form" dated January 30, 2018 (ECF No. 85-5) with another copy of the proposed grievance (ECF No. 85-6), as well as another home-made Step II appeal form with a new date (Feb. 7, 2018) (ECF No. 85-7) with a copy of the proposed grievance (ECF No. 85-8). However, Hailey has presented no evidence that he sent any of these documents to the MTU Grievance Coordinator. See Policy Directive 03.02.130 ¶ R.[1]

Hailey also included a type-written paper entitled, "FORMAL COMPLAINT #14, 15, 16, 17, AND 18" addressed to MTU Warden Burton (dated Feb. 13, 2018) (ECF No. 85-9), in which he complains about MTU Grievance Coordinator N. Lake for failing "to submit, process,

---

[1] Policy Directive 03.02.130 ¶ R provides in relevant part,

"Prisoners in a CFA institution may use an interdepartment mail run, if available, to send a grievance to another facility. If an interdepartment mail run is not available and the prisoner does not have sufficient funds to mail the grievance, postage shall be loaned as set forth in PD 05.03.118 'Prisoner Mail'."

7

file, and give unique identifications to grievances pursuant to policy directive." It appears that the Warden received this "formal complaint," because he responded in a Memorandum as follows:

> Your accusations against Grievance Coordinator N. Lake concerning his failure to submit, process, file, and give "unique" identifications to grievances has been brought to my attention. However, after reviewing your grievances that you have submitted your claims are unsubstantiated as he has followed policy and has at no time violated your due process.
>
> After speaking with Grievance Coordinator Lake, he has stated that he has not received any kites from you requesting Step II appeal forms for any of the mentioned grievances. He cannot process what he does not receive, however if you would like appeal forms from him, please use the kite system to request the Step II appeals that you would like.

Memorandum (Feb. 21, 2018) (ECF No. 85-10). Hailey also attached a hand-made Step III appeal form dated Feb. 20, 2018, claiming that no Step II response was given, accusing the grievance coordinator of "deliberately refusing to give this attached Step 1 the recognize [sic] grievance identifier" and referencing "staff corruption" (ECF Nos. 85-11 and 85-12).

In his reply (ECF No. 88), Blackman points out that while Hailey filed copies of papers that he created, there is no evidence that Hailey exhausted a grievance related to his retaliation claim.

Having reviewed the parties' submissions, there is no record that Hailey filed or exhausted a grievance against defendant Blackman pursuant to Policy Directive 03.02.130. While Hailey attached copies of papers and home-made Step II and Step III appeal forms which he claims to have sent to the grievance coordinator at MTU, Hailey has presented no evidence to establish that he sent these papers or followed the procedure set forth in Policy Directive 03.02.130 ¶ R. The record does contain Hailey's "formal complaint" sent to MTU Warden Burton. However, there is no evidence that Hailey requested Step II appeal forms as the warden advised in his response.

Based on this record, Hailey did not properly exhaust a grievance against defendant Blackman with respect to the incidents alleged in the complaint. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, Blackman's motion for summary judgment should be granted.

### IV.    Recommendation

For these reasons, I respectfully recommend that defendant Blackman's motion for summary judgment (ECF No. 81) be **GRANTED** and that this action be terminated.

Dated:  May 10, 2022                             /s/ Ray Kent
                                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).